UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-24600-MOORE/Elfenbein

**SOFIA RECA**, and
**GPR 5 LLC**,

    Petitioners,

v.

**INTERNAL REVENUE SERVICE**, *et al.*,

    Respondents.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court on Respondent, United States' ("the Government") Motion to Dismiss ("the Motion") Petitioners Sofia Reca and GPR 5 LLC's ("Petitioners") Petition to Quash Summons ("Petition") filed pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. [7]. The Honorable K. Michael Moore has referred this matter to me "to take all necessary and proper action as required by law regarding all pre-trial, non-dispositive matters and/or for a Report and Recommendation with respect to the Petition to Quash Summons." ECF No. [14]. Having reviewed the Motion, the record, and the relevant law, I recommend that the Motion be **GRANTED**, that the Petition be **DISMISSED**, and that the request for an evidentiary hearing be **DENIED**.

**I.    BACKGROUND**

In a letter dated July 19, 2023, the Internal Revenue Service ("the IRS") received a request for information ("EOI Request") from Argentinian authorities — made pursuant to the tax information exchange agreement between the United States and Argentina ("the TIEA"), indicating that Guillermo Pablo Reca ("Mr. Reca") is under investigation by Argentinian tax

authorities for income and personal assets tax for 2019, 2020, and 2021. *See* ECF No. [7-2] at 1-2. During their investigation, Argentinian authorities concluded that Mr. Reca is the beneficial owner of GPR 5 LLC and that he failed to submit information regarding GPR 5 LLC's financial accounts in contravention of Argentinian law. *See id.* at 3. Argentinian authorities indicated that they have exhausted all means available in their country to obtain the information they seek. *See id.*

To assist Argentinian authorities, the IRS issued a Summons to Respondent Citibank N.A. ("Citibank") on November 8, 2023. *See* ECF No. [1] at 2; ECF No. [7-3] at 1-2. Pursuant to the Summons, the IRS directed Citibank:

> to personally appear . . . to give testimony under oath regarding [] [Mr.] Reca . . . and to bring . . . copies of all of the [] documents, records, and information, including electronically stored information, in [Citibank's] possession, custody, or control pertaining to all accounts that may be owned, controlled, or under the signatory authority of [Mr. Reca] for the period from January 1, 2019 through December 31, 2019.

ECF No. [1] at 9. The specific documents the IRS requests from Citibank are "[a]ccount opening documents[,]" "[a]ccount signature cards[,]" "Know-Your-Customer and Customer Due Diligence records," "[m]onthly account statements[,]" and "[c]orrespondance . . . and memorandum files related to the account[s]" under investigation. *Id.* The IRS stated the Summons also applied to the accounts GPR 5 LLC owned. *Id.*

Petitioners filed the instant Petition, claiming that "the IRS may not have complied with the standards established by *United States v*[]. *Powell*, 379 U.S. 48 (1964)" and, therefore, the Court must quash the Summons. *Id.* at 3. To support their position, Petitioners argue that (1) the Summons "is neither directed at nor limited to the supposed Argentin[ian] tax liability of" Mr. Reca; (2) the Petitioners "are not subject to Argentin[ian] taxation[;]" (3) "the requested records do not relate to" Mr. Reca; (4) the Summons is "overbroad because it encompasses bank records

2

and documents unrelated to the alleged Argentin[ian] tax liability" of Mr. Reca; and (5) the Summons "would result in the production of irrelevant and confidential documents[.]" *Id.* Remarkably, Petitioners admit that Petitioner Sofia Reca ("Ms. Reca") "does not have standing" to bring the instant Petition, but they argue that she should because the Summons "directly impacts her right to privacy in her financial records." *Id.*

The Government, on the other hand, contends that the Petition should be dismissed. They argue that this Court lacks subject-matter jurisdiction to adjudicate the Petition and that the Petitioners failed to provide facts to state a claim for relief. The Government's jurisdictional argument has two parts. First, it argues that the Court lacks subject-matter jurisdiction to adjudicate the Petition as it relates to Ms. Reca because the United States' limited waiver of sovereign immunity — enshrined in 26 U.S.C. § 7609(b) — does not apply to her. *See* ECF No. [7-1] at 2-4. Second, it argues that the Petition is untimely under 26 U.S.C. § 7609(b)(2)(A). *See id.* at 4-5.

The Government's Rule 12(b)(6) argument turns on the Petitioners' purported failure to disprove that the IRS issued the Summons in good faith. *See generally id.* at 6-11. It is the Government's position that the IRS issued the Summons in good faith by satisfying the four-factor test articulated in *Powell*, which requires (1) "that the investigation [is being] conducted pursuant to a legitimate purpose[;]" (2) "that the inquiry [will] be relevant to that purpose[;]" (3) "that the information sought is not already within the [IRS's] possession[;]" and (4) "that the administrative steps required by the [Internal Revenue Code] have been followed[.]" 379 U.S. at 57-58. The Government argues that the Petitioners failed to plead facts raising an inference of bad faith.

Petitioners thereafter filed a Response that tracks the arguments raised in the Petition. More specifically, and as further explained below, Petitioners challenge the validity of the

3

Summons based on the second *Powell* factor, arguing that "the Summons is not relevant to the alleged purpose." ECF No. [11] at 2. The Government has since filed a Reply, ECF No. [12], and a Notice of Supplemental Authority, ECF No. [13]. The Motion is now ripe for review.

## II.    DISCUSSION

As discussed in this section, I conclude that (1) the Court lacks subject-matter jurisdiction to consider the Petition as it relates to Ms. Reca; (2) the Petition is untimely under § 7609(b)(2)(A); and (3) even if the Petition were timely and did not suffer from a jurisdictional deficiency, the Motion must be granted and the Petition dismissed because the Government established that it issued the Summons in good faith and Petitioners failed to provide specific facts to raise an inference of bad faith on the Government's part. I explain my reasoning below.

### A.    The Court's Jurisdiction to Adjudicate the Petition

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983) (footnote call number omitted). "Waivers of the Government's sovereign immunity, to be effective, must be unequivocally expressed." *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992) (quotation and other citation omitted). Should the United States make such a waiver, it "has the power to condition a waiver of its immunity as broadly or narrowly as it wishes, and according to whatever terms it chooses to impose." *Zelaya v. United States*, 781 F.3d 1315, 1321-22 (11th Cir. 2015) (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Courts must strictly observe the "limitations and conditions upon which the Government consents to be sued" and cannot imply exceptions not present within the terms of the waiver. *Soriano v. United States*, 352 U.S. 270, 276 (1957). If there is no specific waiver of sovereign immunity as to a particular

4

claim filed against the Government, a federal court will lack subject-matter jurisdiction over the suit. *See Zelaya*, 781 F.3d at 1322.

Title 26 U.S.C. § 7609(h) provides a limited waiver of the United States' sovereign immunity, empowering district courts "to hear and determine any proceeding brought under subsection (b)(2)[.]" *Id.* Section 7609(b)(2)(A) gives "any person who is entitled to notice of a summons under subsection (a)" the right to bring a proceeding to quash an administrative summons. *Id.* The parties entitled to notice include anyone "identified in the summons." 26 U.S.C. § 7609(a).

In the Summons at issue, only Mr. Reca and GPR 5 LLC were designated as noticees. *See* ECF No. [7-3] at 6-8. Therefore, § 7609(h)'s limited waiver of liability only applies to Mr. Reca and GPR 5 LLC, and only they have standing to file a petition to quash the Summons. Petitioners acknowledge as much in the Petition, stating that Ms. Reca "does not appear to have standing[.]" ECF No. [1] at 3. Similarly, in response to the Government's Motion, Petitioners do not cite to any legal authority that would bestow Ms. Reca standing to quash the Summons, simply making an *ipse dixit* assertion that she "should have standing over her confidential financial records." ECF No. [11] at 2. Saying one should have standing does not make it so. Because the limited waiver of liability does not apply to Ms. Reca, this Court lacks jurisdiction to consider the Petition as it relates to her; and for that reason, I find that this action should be dismissed for lack of subject-matter jurisdiction as to Ms. Reca's claims. *See Sherwood*, 312 U.S. at 590 ("The section must be interpreted in the light of its function in giving consent of the Government to be sued, which consent, since it is a relinquishment of a sovereign immunity, must be strictly interpreted." (citations omitted)).

**B.      26 U.S.C. § 7609(b)(2)(A)'s Limitations Period**

The limited and specific grant of federal jurisdiction made in § 7609(b) is time-limited. Qualified individuals initiating proceedings to quash must do so no "later than the 20th day" after receiving notice of the challenged summons. § 7609(b)(2)(A). If notice is being provided by mail, § 7609(b)(2)(A)'s limitations period is calculated from the date the IRS sends the notice by certified mail, not the date the noticee receives it. *See Stringer v. United States*, 776 F.2d 274, 275-76 (11th Cir. 1985) ("Here the wording of the statute involved is clear and unambiguous: [§] 7609(b)(2)(A) mandates that the notice be given in the manner provided in subsection (a)(2); subsection (a)(2) expressly provides that notice is *sufficient* if *mailed* by certified or registered mail to the last known address of the person entitled to notice. This language negates any inference that the requisite notice is not 'given' until its receipt by the addressee." (emphasis in original)). Should a petitioner file a petition to quash beyond the 20-day limitations period, the Court will only consider it if the petitioner shows good cause for the delay. *See Floyd v. Internal Revenue Serv.*, No. 2:18-CV-01516-RDP, 2018 WL 10593640, at *2 (N.D. Ala. Nov. 27, 2018) ("Though the court *has jurisdiction* to entertain [the petitioner's] one-day-late petition to quash, the court would ordinarily still need to decide whether equitable principles warrant tolling § 7609(b)(2)(A)'s limitations period and excusing [the petitioner's] late filing." (emphasis added)).

The IRS provided Mr. Reca and GPR 5 LLC notice on November 8, 2023, when it mailed a physical notice and a copy of the Summons via certified mail. *See* ECF No. [7-3] at 50-59; *Callahan v. Schultz*, 783 F.2d 1543, 1545 (11th Cir. 1986) ("Notice under [§] 7609 is given on the date it is mailed." (citation omitted)). Petitioners filed the instant Petition on December 6, 2023 — 28 days after the IRS provided Mr. Reca and GPR 5 LLC with notice. *See generally* ECF No. [1]. The Petition, therefore, is untimely.

Although the Government raised this argument in the Motion, Petitioners chose to leave the timeliness issue unaddressed.  Indeed, Petitioners' Response challenges other arguments in the Government's Motion, such as the second *Powell* factor, but it stays silent on the timeliness issue and does not otherwise proffer any reasons as to why the Court should equitably toll the 20-day limitations period.  *See* ECF No. [11].  Petitioners' conspicuous failure to address this argument operates as a concession on this point.  *See, e.g.*, *Melendez v. Town of Bay Harbor Islands*, No. 14-CV-22383, 2014 WL 6682535, at *7 (S.D. Fla. Nov. 25, 2014) ("[The plaintiff] wholly fails to address this argument in her Response . . . , and therefore concedes the point." (citing *Glass v. Lahood*, 786 F.Supp.2d 189, 210 (D.D.C.2011)).  Consequently, I find that the instant Petition is untimely and that the Petitioners failed to establish any circumstances that warrant the equitable tolling of § 7609(b)(2)(A)'s limitations period.  The Petition, therefore, must be dismissed for failure to comply with the timing requirements of the statute.

C. **Validity of the Summons**

Congress has granted the IRS "broad statutory authority to summon a taxpayer to produce documents or give testimony relevant to determining tax liability." *United States v. Clarke*, 573 U.S. 248, 249 (2014); *see also United States v. Arthur Young & Co.*, 465 U.S. 805, 816 (1984) ("In order to encourage effective tax investigations, Congress has endowed the IRS with expansive information-gathering authority; § 7602 is the centerpiece of that congressional design.").  "That authority includes issuing a summons pursuant to a treaty partner's request." *Rabassa v. United States*, No. 23-12445, 2024 WL 1435103, at *2 (11th Cir. Apr. 3, 2024) (citing *United States v. Stuart*, 489 U.S. 353, 360-63 (1989)).  Nevertheless — and as already discussed, § 7609 empowers certain taxpayers to object to administrative summons by allowing them to initiate proceedings to quash.  *See generally id.*  Objections to administrative summons "must be derived from one of

three sources: a constitutional provision;" the Internal Revenue Code; "or the general standards governing judicial enforcement of administrative subpoenas enunciated in *United States v. Powell*. . . ." *Presley v. United States*, 895 F.3d 1284, 1290 (11th Cir. 2018) (alteration in original; quoting *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741-42 (1984)).

Importantly, the Supreme Court has emphasized that summons enforcement proceedings — or as in this case, proceedings seeking to quash such summons — "are to be 'summary in nature.'" *Clarke*, 573 U.S. at 254 (quoting *Stuart*, 489 U.S. at 369). As the purpose of a summons is only to inquire, and not to accuse, and this tool is a "crucial backstop in a tax system based on self-reporting," "court[s] may ask only whether the IRS issued the summons in good faith, and must eschew any broader role of 'oversee[ing] the [IRS's] determinations to investigate.'" *Id.* (internal citations omitted, alterations in original).

The Government can make its prima facie showing of good faith by satisfying the four-factor test articulated in *Powell*. Specifically, the United States must show: "(1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry will be relevant to that purpose, (3) that the information sought is not already in the IRS' possession and, (4) that it has taken the administrative steps necessary to the issuance of a summons." *La Mura v. United States*, 765 F.2d 974, 979 (11th Cir. 1985) (citing *Powell*, 379 U.S. at 57-59; other citations omitted). "The [Government] can satisfy this burden merely by presenting the sworn affidavit of the agent who issued the summons attesting to these facts." *Id.* (citing *Matter of Newton*, 718 F.2d 1015, 1019 (11th Cir. 1983); other citation omitted). Once the Government makes the prima facie showing, "the burden shifts to the party contesting the summons to disprove one of the four elements of the government's prima facie showing or convince the court that enforcement of the summons would constitute an abuse of the court's process." *Id.* at 979-80 (citations omitted). It

bears noting that the burden on the contesting party is heavy and requires allegations of specific facts and the introduction of evidence. *United States v. Leventhal*, 961 F.2d 936, 940 (11th Cir. 1992).

Here, Petitioners premise the Petition on the argument that the IRS did not issue a "valid [s]ummons" because it "may not have complied with the standards established by *United States v. Powell*[,]" thereby challenging whether the IRS acted in good faith when issuing the Summons. ECF No. [1] at 3. In making its prima facie showing of good faith under *Powell*, the Government relies on the declarations of two IRS employees involved in the issuance of the Summons: (1) Exchange of Information ("EOI") Program Manager Patricia Thomas ("Thomas") — the IRS employee who approved Argentina's EOI request, and (2) IRS Tax Law Specialist Valentina Lagana ("Lagana") — the IRS employee who issued the Summons. ECF No. [7-1] at 8-9. Through these declarations, the Government has satisfied each of the *Powell* factors.

First, the Government has shown "that the investigation will be conducted pursuant to a legitimate purpose." *La Mura*, 765 F.2d at 979 (citing *Powell*, 379 U.S. at 57-59; other citations omitted). In her affidavit, Thomas indicated that her "office received a request for information . . . pursuant to the U.S.-Argentina TIEA from the Government of the Argentin[ian] Republic, acting through the Federal Administrator of Public Revenue." ECF No. [7-2] at 2. She continues stating that the EOI Request "indicate[d] that [] [Mr.] Reca [] is under examination by the Argentin[ian] tax authorities for income tax and personal assets tax for tax years 2019, 2020, and 2021[,]" *id.* (footnote call number omitted), and that "Argentin[ian] tax authorities believe that [Mr. Reca] beneficially owns GPR 5 LLC, and that [Mr. Reca] [] failed to submit information regarding the financial accounts of an entity that he beneficially owns as required under Argentin[ian] law[,]" *id.* at 3. Thus, Argentinian authorities seek "ownership and account information concerning the

9

Citibank [] bank accounts of GPR 5 LLC, including bank statements, opening documents, and closing documents." *Id.*

Similarly, Lagana's affidavit acknowledged that "Argentina made a request for the exchange of information [] to the United States pursuant to Article 5 of the U.S.- Argentina TIEA[,] . . . seek[ing] information in connection with the examination of [] [Mr.] Reca's income tax and personal asset tax liabilities relating to tax periods January 1, 2019, through December 31, 2021." ECF No. [7-3] at 2 (footnote call number omitted). Lagana stated that "[p]ursuant to the EOI Request, and in accordance with 26 U.S.C. § 7602, [she] issued an IRS summons on November 8, 2023, to Citibank [] via certified mail for information pertaining to the bank accounts of GPR 5 LLC to the extent that [] [Mr.] Reca owned, controlled, or had signatory authority over such accounts between January 1, 2019, and December 31, 2019." *Id.* These two affidavits are sufficient to show "that the investigation will be conducted pursuant to a legitimate purpose," and therefore, the first *Powell* factor is satisfied. *See Mazurek v. United States*, 271 F.3d 226, 230 (5th Cir. 2001) ("Assisting the investigation of a foreign tax authority has been held to be a legitimate purpose by itself." (footnote call number omitted)); *see also La Mura*, 765 F.2d at 979 (explaining that the IRS can satisfy its prima facie showing "merely by presenting the sworn affidavit of the agent who issued the summons attesting to these facts").

Second, the Government has shown "that the inquiry will be relevant to that purpose" for issuing the Summons. *La Mura*, 765 F.2d at 979 (citing *Powell*, 379 U.S. at 57-59; other citations omitted). Thomas stated in her affidavit, "[b]ased upon available information, including information furnished by Argentina, there is a reasonable basis to believe that the summonsed records, if produced, may contain information which is relevant to the Argentin[ian] tax authorities' determination of the proper Argentin[ian] income tax liabilities of" Mr. Reca. ECF

10

No. [7-2] at 3. This representation is sufficient to satisfy the second *Powell* prong. *See United States v. Morse*, 532 F.3d 1130, 1132 (11th Cir. 2008) (holding that an affidavit from an IRS agent stating that "the summons material may be relevant to the investigation" was sufficient to satisfy the second *Powell* prong).

Third, the Government has shown "that the information sought is not already in the IRS' possession." *La Mura*, 765 F.2d at 979 (citing *Powell*, 379 U.S. at 57-59; other citations omitted). Thomas and Lagana, in their respective affidavits, stated that "[t]he Argentin[ian] tax authorities have indicated that they have exhausted all means available in their country to obtain the information requested[,] *id.*, and that "[t]he summonsed information is not in the possession of the IRS[,]" ECF No. [7-3] at 3. With these representations, the Government has satisfied the third *Powell* prong. *See Morse*, 532 F.3d at 1132 (holding that an affidavit from an IRS agent stating that "the summoned materials are not already in the possession of the IRS" was sufficient to satisfy the third *Powell* prong).

Finally, the Government has shown "that it has taken the administrative steps necessary to the issuance of a summons." *La Mura*, 765 F.2d at 979 (citing *Powell*, 379 U.S. at 57-59; other citations omitted). Thomas, in her affidavit, stated that the Argentinian "EOI Request states that it is in conformity with the laws and administrative practices of the Argentin[ian] tax administration[,]" and that "[b]ased on [her] review of the EOI Request, [she] ha[s] determined that it is a proper request within the guidelines of the U.S.-Argentin[ian] TIEA . . . that it is appropriate for the United States of America to honor the EOI Request and thereby lend assistance and support Argentina, as the U.S.-Argentina TIEA contemplates." ECF No. [7-2] at 4. And Lagana, in her affidavit, stated that "[i]n accordance with [] § 7609(a), she sent a notice of third-party summons to [] [Mr.] Reca and GPR 5 LLC on November 8, 2023, via certified mail[,]" and

that while "the mailing to GPR 5 LLC was returned to sender as 'unclaimed'/'unable to forward' . . . , it constituted sufficient notice under 26 U.S.C. § 7609(a)(2) because it was sent by certified mail to the 'last known address' of GPR 5 LLC." ECF No. [7-3] at 2-3. Lagana further stated that "[a]ll administrative steps required by the Internal Revenue Code for the issuance of the summonses ha[d] been taken." *Id.* at 3. As a result, I find that the Government satisfied the fourth and final *Powell* prong. *See Morse*, 532 F.3d at 1132 (holding that affidavit from IRS agent stating that "all administrative steps required for the issuance of the summons have been followed" was sufficient to satisfy the fourth *Powell* prong).

Now that "the United States [has made] its prima facie case for enforcement, 'the burden shifts to . . . [Petitioners] to disprove one of the four elements of the government's prima facie showing or convince the court that the enforcement of the summons would constitute an abuse of the court's process.'" *Verges v. United States*, No. 18-CV-60235-BB, 2018 WL 3423965, at *1 (S.D. Fla. June 27, 2018) (quoting *La Mura*, 765 F.2d at 979-80)). Enforcing a summons constitutes an abuse of the court's process if the summons was issued for an improper purpose, such as "to harass the taxpayer or to put pressure on him to settle a collateral dispute." *Powell*, 379 U.S. at 58.

In their Petition and Response, Petitioners do not argue that enforcement of the Summons would be an abuse of the Court's process. They instead challenge the Summons under *Powell*, specifically the second factor. They do not take issue with the first, third, or fourth factors. As to the second *Powell* factor, Petitioners argue that (1) the "Summons is neither directed at nor limited to the supposed Argentin[ian] tax liability of" Mr. Reca, and (2) the "Summons is [] overbroad because it encompasses bank records and documents unrelated to the alleged Argentin[ian] tax liability of" Mr. Reca "and would result in the production of irrelevant and confidential

12

documents." ECF No. [1] at 3; *see also* ECF No. [11] at 2-5. Due to the significant overlap between these two arguments, I will address them together.

The Supreme Court has stated that an inquiry pursuant to an administrative summons will be valid if summoned information "may be relevant" to the purpose of the investigation, *Powell* 379 U.S. 57. This pronouncement tracks the plain language of § 7602(a)(2), which empowers the IRS to subpoena any records "as may be relevant or material" to the IRS's investigation. Section 7602(a)(2)'s "may be" language "reflects Congress' express intention to allow the IRS to obtain items of even potential relevance to an ongoing investigation, without reference to its admissibility." *United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984). The reason Congress accords the IRS such deference is because the IRS "can hardly be expected to know whether [] [information] will . . . be relevant until it is procured and scrutinized." *Id.* Therefore, the IRS is not "required to establish that the [information] it seeks [is] actually relevant in any technical, evidentiary sense." *Id.*

Thomas established relevance in her affidavit by stating: "Argentin[ian] tax authorities believe that [Mr. Reca] beneficially owns GPR 5 LLC, and that [Mr. Reca] has failed to submit information regarding the financial accounts of" GPR 5 LLC — "an entity that he beneficially owns [—] as required under Argentin[ian] law." ECF No. [7-2] at 3. For Argentinian authorities to assess whether Mr. Reca has complied with Argentinian law, Citibank must necessarily disclose the information relating to GPR 5 LLC's account held at this bank. The Petitioners' vague and unsubstantiated claims that the information produced would be immaterial do not provide the Court with grounds to quash the Summons. *See Leventhal*, 961 F.2d at 940.

Furthermore, the IRS has tailored its request for information — as outlined in the Summons — to meet the needs of the Argentinian investigation. Specifically, the IRS only seeks

"documents, records, information, . . . pertaining to all accounts that may be owned, controlled, or under the signatory authority of [Mr. Reca] for the period from January 1, 2019 through December 31, 2019[.]" ECF No. [1] at 9. In challenging the Summons, the Petitioners do not argue how the IRS could have better tailored the Summons; instead, they focus on the fact that Ms. Reca wholly owns GPR 5 LLC and, therefore, could only produce irrelevant information because GPR 5 LLC's account statements relate to her, and she is not currently under investigation. ECF No. [11] at 4. This argument ignores the fact that GPR 5 LLC bears the initials of Mr. Reca, creating a plausible connection between the two. More importantly, as the Government points out, the Argentinian authorities suspect a possible beneficial interest between Mr. Reca and GPR 5 LLC, regardless of the entity's legal ownership. Part of the investigative inquiry is whether Mr. Reca has any degree of control over this entity, not whether he owns the entity, making the requested information relevant to the Argentinian investigation. And even if the Petitioners' assertions are true and GPR 5 LLC's account information has no connection to Mr. Reca, the Petitioners have no cause for concern as the Summons explicitly excludes account information unconnected to Mr. Reca. *See* ECF No. [1] at 9.

Finally, Petitioners request an evidentiary hearing in this matter. To warrant an evidentiary hearing, Petitioners must "point to specific facts or circumstances plausibly raising an inference of bad faith." *United States v. Clarke*, 816 F.3d 1310, 1318 (11th Cir. 2016) (quoting *Clarke*, 573 U.S. at 249). A taxpayer's bare allegations of an improper purpose does not entitle him or her to examine IRS officials at an evidentiary hearing. *United States v. Clarke*, 573 U.S. at 249. Indeed, the taxpayer "must offer some credible evidence supporting his charge." *Id.* Here, Petitioners simply alleged that the evidence was irrelevant because of the ownership structure of GPR 5 LLC without addressing the Argentinian's authority's desire for the records to determine whether Mr.

14

Reca has any beneficial interest in the entity, regardless of legal ownership rights. As a result, Petitioners have failed to offer any credible evidence supporting their claim that the Government issued the Summons in bad faith, making an evidentiary hearing unnecessary. *See Rabassa*, 2024 WL 1435103 at *4 (finding district court did not abuse its discretion in denying an evidentiary hearing when the request was based on arguments that were irrelevant to the good faith determination); *Dyer Coriat v. United States*, No. 23-11648, 2023 WL 8369970, at *2 (11th Cir. Dec. 4, 2023) (affirming district court's decision to deny evidentiary hearing when the request raised issues regarding the foreign government's history of corruption but did not allege facts giving rise to an improper purpose by the IRS).

For the foregoing reasons, the Petitioners' attack on the Summons's validity fails and the Petition must be dismissed.

### III. CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that:

1. The Government's Motion to Dismiss, **ECF No. [7]**, be **GRANTED** and Petitioners' Petition, **ECF No. [1]**, be **DISMISSED**.

2. Petitioners' request for an evidentiary hearing be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

CASE NO. 23-CV-24600-MOORE/Elfenbein

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on May 22, 2024.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record